UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

_____
)
In re VALENTIN KUZMICH MEDVEDEV )
and MARIA FYODOROVNA MEDVEDEVA, )
)  Case No. C09-1400RSL
Debtors. )
_____)  Bankruptcy Case No. 07-14535
)
MARIA FYODOROVNA MEDVEDEVA, )
)
Appellant, )
v. )
)  ORDER ON APPEAL
NANCY JAMES, in her capacity as )
Chapter 7 Bankruptcy Trustee, )
)
Appellee. )
_____)

This matter comes before the Court on debtor Maria Fyodorovna Medvedeva's petition for writ of mandamus (Dkt. # 4) and appeal from the "Order Adjudicating Jurisdiction Regarding Residence, Wrongful Death and Survivor Actions" entered by the Honorable Samuel J. Steiner, United States Bankruptcy Judge, on August 14, 2009 (Dkt. # 1). The requests for relief are intertwined in that they both involve the propriety of the bankruptcy court's exercise of jurisdiction over certain property. The Court, acting in an appellate capacity, reviews the bankruptcy court's legal conclusions *de novo* and its factual determinations for clear error. In re Olshan, 356 F.3d 1078, 1083 (9th Cir. 2004). Mixed questions of law and fact are reviewed *de novo*. Banks v. Gill Distribution Centers, Inc., 263 F.3d 862, 867 (9th Cir. 2001).

ORDER ON APPEAL - 1

## BACKGROUND

As noted by the Honorable Marsha J. Pechman, United States District Judge, in a related case, "[t]his matter is part of a complicated tapestry of bankruptcy, guardianship, tort and probate actions." Order on Motion to Intervene and to Withdraw Reference, C09-1131MJP (W.D. Wash., Sept. 30, 2009). Three items of property – a residence, a tort claim, and a wrongful death action – are claimed to be part of more than one estate, making it difficult to discern which court has jurisdiction over the *res* and who has the power to make decisions regarding the property. The relevant facts are as follows:

In February 2006, Valentin Medvedev suffered a debilitating stroke. His family retained the law firm of Miracle Pruzan & Pruzan to investigate the possibility of a medical malpractice action against the University of Washington Medical Center. On December 21, 2006, Mr. Medvedev was declared legally incapacitated by the King County Superior Court. A guardian was appointed to protect his interests and to administer his assets through a guardianship estate. In August 2007, Maria Medvedeva was appointed as her husband's substitute guardian. Without the advice of counsel, she initiated a Chapter 7 bankruptcy proceeding on behalf of herself and her husband. Respondent Nancy James was appointed as Bankruptcy Trustee. The potential malpractice action was not listed among the assets of Mr. Medvedev in either the guardianship or the bankruptcy proceedings. In May 2008, the malpractice claim was filed by Miracle Pruzan & Pruzan in King County Superior Court.

Mr. Medvedev died on November 15, 2008. His wife initiated probate proceedings on December 26, 2008, and was appointed personal representative of the probate estate. In that role, Mrs. Medvedeva consulted with Miracle Pruzan & Pruzan regarding the continuation of the medical malpractice suit and the filing of a wrongful death action. Both the Trustee and Mrs. Medvedeva sought a ruling from the bankruptcy court regarding who had the power to prosecute the civil claims. The Trustee also sought permission to liquidate Mr. Medvedev's half of the family residence for the benefit of his creditors (the bankruptcy court

ORDER ON APPEAL - 2 -2-

had already determined that it had jurisdiction over Mrs. Medvedeva's half of the residence, a decision that is not at issue here). After summarizing the relevant events, Judge Steiner concluded that (1) the guardianship terminated upon Mr. Medvedev's death, (2) the residence was now under the sole jurisdiction of the bankruptcy court, and (3) both the malpractice and wrongful death claims existed in a contingent, unliquidated state at the time the bankruptcy petition was filed and are therefore property of the bankruptcy estate.

## DISCUSSION

### A.  Mandamus Action

A writ of mandamus is an extraordinary remedy used to confine a lower court to its proper jurisdiction or to compel it to undertake an action which it has a duty to perform. DeGeorge v. U.S. Dist. Ct., 219 F.3d 930, 934 (9th Cir. 2000). In determining whether a writ should issue, the Court considers five factors: (1) whether there is another adequate means of attaining relief; (2) whether failure to grant the writ would cause petitioner damage or prejudice that could not be corrected on direct appeal; (3) whether the trial court's action or failure to act constituted clear legal error; (4) whether the trial court's error is common or manifests a persistent disregard of federal rules; and (5) whether the issues raised are new, important, and/or matters of first impression. Bauman v. U.S. Dist. Ct., 557 F.2d 650, 654-55 (9th Cir. 1977). The petitioner bears the burden of establishing that his right to a writ is "clear and undisputable." Bankers Life & Cas. Co. v. Holland, 346 U.S. 379, 384 (1953).

The balance of relevant factors does not clearly establish petitioner's right to a writ. Although the jurisdictional issues raised in the petition are complicated and may be matters of first impression, petitioner may obtain review of the bankruptcy court's rulings on direct appeal, and she will not suffer damage, prejudice, or even delay because she has both her appeal and her petition currently pending before this Court. In light of the painstaking analysis necessary to resolve the jurisdictional issues, it is impossible to conclude that the bankruptcy court's decision constitutes clear error or can be described as common or wilful. The petition for

ORDER ON APPEAL - 3                -3-

writ of mandamus is, therefore, DENIED.

**B.     Jurisdiction Over Residence**

All parties and the bankruptcy court agree that Mr. Medvedev's one-half interest in the family residence became part of the guardianship estate when Mr. Medvedev was declared incapacitated in December 2006. Mrs. Medvedeva's interest in the property was not, however, administered by the guardian or subject to the state court's jurisdiction. When Mrs. Medvedeva initiated Chapter 7 proceedings on behalf of herself and her husband in September 2007, her half of the residence became part of the bankruptcy estate. Without specifying its rationale, the bankruptcy court acknowledged that Mr. Medvedev's interest in the residence was under the *in rem* jurisdiction of the King County Superior Court and declined to interfere with that court's control over the *res*. The bankruptcy court authorized the Trustee to list the residence for sale but recognized that the property could not actually be sold without the approval of both the bankruptcy court and the Superior Court, each of which had jurisdiction over a half-interest of the undivided whole.

In an effort to streamline the listing and sale of the property, the Trustee sought an order in the guardianship proceedings that would have removed the residence from the guardianship estate so that both debtors' interests could be administered by the bankruptcy court. Although the Superior Court was willing to grant the requested relief, the guardianship proceeding itself was then on appeal to the Washington State Court of Appeals. The Superior Court therefore signed an order granting the proposed request for relief if, and only if, the Court of Appeals authorized such an order. Following Mr. Medvedev's death, the Trustee abandoned its efforts in the Superior Court and asked the bankruptcy court to exercise jurisdiction over the entire residence on the theory that the guardianship terminated when the ward died, and the Superior Court had therefore lost jurisdiction over the property within the guardianship estate. Judge Steiner agreed and declared that the realty is now under the sole jurisdiction of the bankruptcy court.

### 1. Necessity of an Adversary Proceeding

Mrs. Medvedeva argues that the bankruptcy court violated Bankruptcy Rule 7001(2) when it made a summary determination that the family residence was part of the bankruptcy estate. Rule 7001(2) requires that "a proceeding to determine the validity, priority, or extent of a lien or other interest in property" be conducted as an adversary proceeding wherein the parties have an opportunity to conduct fact-finding and discovery to establish their respective interests. There is no dispute, however, regarding the debtors' interest in the residence for purposes of Rule 7001(2). The property belongs to the debtors. No other claimants have appeared and the nature of their interests is undisputed. The only question is whether Mr. Medvedev's half of the residence remains subject to the jurisdiction of King County Superior Court. The issue raised in the Trustee's motion is purely legal: whether the bankruptcy court can properly exercise *in rem* jurisdiction over the residence. The Court finds that this is not the type of issue that requires discovery, fact-finding, or an adversary proceeding.[1]

### 2. Effect of Mr. Medvedev's Death

The death of the ward terminates the guardianship and, with it, the guardian's power to act on the ward's behalf. See RCW 11.88.140(1)(c); In re Guardianship of Mayou, 6 Wn. App. 345, 347 (1972). Neither the guardian nor the court can simply walk away from the guardianship proceeding, however. The court retains jurisdiction over the estate until the guardian renders a final accounting and the property is distributed to the proper person. In re Guardianship of Heath's Estate, 30 Wn. App. 115, 117 (1981). If the ward dies intestate, as was

---

[1] In re Cogliano, 355 B.R. 792 (9th Cir. BAP 2006), is not to the contrary. Ms. Cogliano's claim that pension funds were not part of the probate estate could not be resolved without making two factual findings: (1) whether Ms. Cogliano had concealed the funds and (2) whether, at the time the petition was filed, the funds held by the trust could have been transferred or alienated in favor of Ms. Cogliano. The bankruptcy court did not adjudicate these facts through an adversary proceeding. In fact, it did not make any findings regarding these dispositive matters. The Bankruptcy Appellate Panel determined that the lower court's ultimate finding that the funds were part of the bankruptcy estate did not have preclusive effect.

ORDER ON APPEAL - 5                    -5-

the case here, the laws of Washington provide for a smooth transition from guardianship proceeding to probate proceeding:

> Upon the death of an incapacitated person intestate the guardian or limited guardian of his estate has power under the letters issued to him and subject to the direction of the court to administer the estate as the estate of the deceased incapacitated person without further letters unless within forty days after death of the incapacitated person a petition is filed for letters of administration or for letters testamentary and the petition is granted . . . . [in which case] the personal representative shall supersede the guardian or limited guardian in the administration of the estate and the estate shall be administered as a decedent's estate as provided in this title . . . .

RCW 11.88.150(2). The statute ensures that the guardianship estate will be properly administered after the death of the ward: the guardian acquires the powers of the personal representative unless ousted by a timely-filed petition for letters of administration. Mrs. Medvedeva utilized a belt and suspenders strategy here. Despite her position as guardian (through which she could have simply converted the guardianship proceeding into a probate proceeding), she opted to file a separate petition for letters of administration, which was granted by the court.[2] Until the petition for letters of administration was granted, Mrs. Medvedeva had the power to administer the property on behalf of the now-dead ward, with the Superior Court's oversight. After the petition was granted, Mrs. Medvedeva became the personal representative of the probate estate, thereby succeeding herself as administrator of the decedent's estate. The Trustee has not identified, and the Court has not found, any legal theory or case law which suggests that the King County Superior Court lost jurisdiction over the residence at any point between Mr. Medvedev's death and the issuance of the letters of administration. In fact, the laws seem to be written to ensure that the transfer from guardianship estate to probate estate is seamless so that the property remains protected by the state court until it can be finally devolved

---

[2] Although the petition was filed on the 41st day after the death of Mr. Medvedev, it was timely pursuant to Fed. R. Civ. P. 6(a)(1)(C).

ORDER ON APPEAL - 6         -6-

to the heirs through probate. See State v. Frater, 18 Wn.2d 546, 554 (1943) ("Even upon the death of the ward, or the restoration of his competency, judicially determined, the guardianship is deemed to continue, and jurisdiction to remain in the administering court until the ward's estate has been fully accounted for or restored and finally distributed.") (quoting In re Gaddis' Guardianship, 12 Wn.2d 114 , 125 (1942)).

It is undisputed that Mr. Medvedev's interest in the family residence was under the *in rem* jurisdiction of the King County Superior Court at the time of his death. Because the state court retained control over the *res* while Mrs. Medvedeva, the personal representative, superceded Mrs. Medvedeva, the guardian, there was no break in custody, and the bankruptcy court should have refrained from exercising federal jurisdiction over the property. See Marshall v. Marshall, 547 U.S. 293, 311-12 (2006) ("Thus, the probate exception [to federal jurisdiction] reserves to state probate courts the probate or annulment of a will and the administration of a decedent's estate; it also precludes federal courts from endeavoring to dispose of property that is in the custody of a state probate court."). The assertion of *in rem* jurisdiction over Mr. Medvedev's half of the residence was error.

**B.      Jurisdiction Over the Survival Action**

The bankruptcy court exercised jurisdiction over Mr. Medvedev's medical malpractice action because the events which gave rise to the claim occurred pre-filing. There is no doubt that, had the bankruptcy petition been filed first, the potential medical malpractice claim would have been considered a contingent, unliquidated asset of the bankruptcy estate. The question, however, is whether the potential action was already subject to the *in rem* jurisdiction of the King County Superior Court, in which case it would have passed into the probate estate along with the family residence.

Under Title 11 of the Revised Code of Washington, guardianship and probate estates are made up of "real and personal property of a decedent exclusive of homestead rights, exempt property, the family allowance and enforceable claims against, and debts of, the estate."

RCW 11.02.005. At the time Mr. Medvedev was declared incapacitated, his medical malpractice action was a mere possibility: although counsel had been retained to investigate the claim, it was not actually filed until May 2008, seventeen months after a guardian was appointed. The date on which the malpractice claim matured into litigation is not dispositive under Washington law, however. A claim of indebtedness and the related right to bring a cause of action are generally considered property in Washington. See Brown v. Brown, 100 Wn.2d 729, 732 (1984) (noting that "the right to sue for a tort which one has suffered is a chose in action, and therefore property") (citation omitted); Labberton v. Gen. Cas. Co. of Am., 53 Wn.2d 180, 186-87 (1958) ("Property is a word of very broad meaning and when used without qualification, may reasonably be construed to include obligations, rights and other intangibles, as well as physical things.") (citation omitted); Woody's Olympia Lumber, Inc. v. Roney, 9 Wn. App. 626, 628-29 (1973) (a writ of execution can be levied against an alleged medical malpractice claim because the claim fell within the phrase "all property, real and personal"). One of the primary tests used to determine whether a claim for damages constitutes "property" is whether it survives the death of the claimant: if so, the claim is transferrable and is an asset of the ward even though it is contingent and unliquidated. See Slauson v. Schwabacher, 4 Wn. 783, 784-85 (1892) ("We think it may be fairly said that by a great preponderance of authority mere personal torts which die with the party, and do not survive to the personal representatives, are not capable of passing by assignment, and conversely, that a cause of action which does survive to the personal representative can be enforced in the name of an assignee.").

Pursuant to RCW 4.20.046, a medical malpractice claim will survive to the patient's personal representative. The right to sue that existed at the time Mr. Medvedev was declared incapacitated was an asset of the ward that became part of the guardianship estate. Because the state court exercised *in rem* jurisdiction over the cause of action and retained control over the *res* while the guardianship was superceded by the probate proceeding, the bankruptcy court should have refrained from exercising federal jurisdiction over the property. See Marshall,

547 U.S. at 311-12.

**C.     Jurisdiction Over the Wrongful Death Action**

Mr. Medvedev died on November 15, 2008. Upon his death, the personal representative of his estate obtained the right to sue for damages against the entity causing the death. RCW 4.20.010. The wrongful death claim is not, however, for the benefit of the decedent's estate. Rather, the action is prosecuted by the personal representative for the benefit of the spouse, children, or other statutory beneficiary. RCW 4.20.020. The bankruptcy court, relying on In re Lott, 332 B.R. 292 (E.D. Mich. 2005), exercised jurisdiction over the potential wrongful death action on the theory that the claim "existed in a contingent and unliquidated sum at the time the bankruptcy was filed." Appellee's Appendix of Record at 331.

Pursuant to § 541(a) of the bankruptcy code, the bankruptcy estate includes all legal or equitable interests in property held on the date of filing.[3] Unless federal law creates the property at issue, whether a particular item or entitlement constitutes "property" is determined by state law. Butner v. U.S., 440 U.S. 48, 55 (1979) ("Property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding. Uniform treatment of property interests by both state and federal courts within a State serves to reduce uncertainty, to discourage forum shopping, and to prevent a party from receiving a windfall merely by reason of the happenstance of bankruptcy.") (internal quotation marks and citation omitted). As noted above, Washington law considers a claim of indebtedness and the related right to bring a cause of action as property (especially if the cause of action would survive the death of the claimant). The claim does not actually have to be asserted: the right to sue is considered an asset subject to valuation and assignment. But the

---

[3] There is no indication that the 180 day extension set forth in 11 U.S.C. § 541(a)(5) applies in this case. The interest in property at issue did not arise through an inheritance, divorce, or life insurance plan. Even if Mrs. Medvedeva's interest in the wrongful death action were considered an inheritance (which it is not), the interest arose more than 180 days after the petition was filed.

ORDER ON APPEAL - 9                        -9-

Trustee has not identified, and the Court has not found, any case in which the mere possibility of a cause of action, the elements of which are not satisfied and to which no right or entitlement then exists, was considered an asset under Washington law. Nor does In re Lott support the extraordinary concept that a hypothetical claim is "property." In In re Lott, the debtor's mother died before the debtor filed for bankruptcy. The wrongful death claim had therefore accrued, and the debtor, as a statutory beneficiary of the cause of action, had a contingent right to any proceeds of the action as of the date of filing. These facts are clearly distinguishable from the case at bar. Here, Mr. Medvedev died more than a year after the bankruptcy petition was filed. Mrs. Medvedeva had no right, contingent or otherwise, to proceeds related to her husband's death at the time the bankruptcy petition was filed because he had not, in fact, died. To hold otherwise would ignore the statutory requirement that a "legal or equitable interest in property" exist at the time of filing and would force debtors and guardians to list hypothetical causes of action based on the mere possibility of a death, accident, or other tortious injury.

There is a line of bankruptcy cases that diverges from the state law analysis set forth above. In In re Richards, 249 B.R. 859, 861 (E.D. Mich. 2000), the court held that whether a personal injury claim is "property" of the bankruptcy estate depends not on when the claim accrued under state law, but on whether the claim is "sufficiently rooted in the pre-bankruptcy past" (quoting Segal v. Rochelle, 382 U.S. 375, 380 (1966)). A few courts have applied this standard to a claim arising out of a post-petition death and found that if the injury which caused the death occurred pre-petition, the death is "sufficiently rooted in the pre-bankruptcy past" to make the wrongful death claim part of the bankruptcy estate. See In re Sommer, 2008 WL 704401 at *3 (N.D. Ohio B.R. March 14, 2008). These courts misread Segal and misapprehend the nature of a wrongful death action.

In Segal, the debtors filed for bankruptcy in September 1961. The following year, they sought a tax refund from the United States based on taxes paid and losses incurred pre-petition. Because the term "property" was not defined in the pre-1978 Bankruptcy Act, the

Supreme Court turned to the purposes of the Act to inform its analysis.

> The main thrust of § 70a(5) [of the Bankruptcy Act] is to secure for creditors everything of value the bankrupt may possess in alienable or leviable form when he files his petition. To this end the term 'property' has been construed most generously and an interest is not outside its reach because it is novel or contingent or because enjoyment must be postponed. . . . However, limitations on the term do grow out of other purposes of the Act; one purpose which is highly prominent and is relevant in this case is to leave the bankrupt free after the date of his petition to accumulate new wealth in the future.

Segal, 382 U.S. at 379 (citations omitted). The Supreme Court noted that, as of the date of bankruptcy, the debtors met the statutory requirements for obtaining a refund: income taxes had been paid within the past three years and a net operating loss was exhibited. Thus, "realization of the refund existed at the time these bankruptcy petitions were filed" and the potential refund was part of the bankruptcy estate. Segal, 382 U.S. at 380. The fact that the refund could not be obtained until the following year simply postponed the debtors' enjoyment of the property to which they were entitled as of September 1961.

There is some doubt regarding the continued viability of a separate "sufficiently rooted" standard for determining whether a claim is property of the bankruptcy estate. In 1978, Congress enacted the Bankruptcy Code which defines property of the estate as "all legal and equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). Attempting to incorporate the result of Segal into the new law, Congress swept within the bankruptcy estate some forms of after-acquired property, namely "[p]roceeds, product, offspring, rents, or profits of or from property of the estate" and "[a]ny interest in property that the estate acquires after the commencement of the case." 11 U.S.C. § 541(a)(6) and (7). See S. Rep. No. 95-989 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5868 ("The result of Segal v. Rochelle, 382 U.S. 375 (1966), is followed, and the right to a refund is property of the estate.") (footnote omitted). Segal's "sufficiently rooted" language, which is rather ill-defined and subject to creative arguments regarding causation, was not adopted. As

ORDER ON APPEAL - 11                -11-

defined in the Bankruptcy Code, an item or right is part of the bankruptcy estate if (a) the debtor had a pre-petition legal or equitable interest in it or (b) the item or right was generated by something that could be considered pre-petition property. Segal should not be read to expand the bankruptcy estate to include legal or equitable interests that arose post-petition and do not fall within § 541(a)(6) or (7). See Burgess v. Sikes, 438 F.3d 493, 498-99 (5th Cir. 2006); In re Holstein, 321 B.R. 229, 238 (N.D. Ill. 2005).

Even if a causation analysis, separate from the language of the statute, is appropriate, the facts of Segal are readily distinguishable from those presented in this case. At the time the Segals filed for bankruptcy, the elements necessary to obtain a tax refund existed: all the debtors had to do was wait until the calendar year ended to confirm that circumstances had not changed and apply for the refund.[4] The wrongful death action, on the other hand, was not even a speculative right at the time the Medvedevs filed for bankruptcy. Washington's wrongful death statute was created to provide the decedent's next of kin a "new and original cause of action" to recover from the tortfeasor for the pecuniary loss they suffered as a result of the wrongful killing. See Gray v. Goodson, 61 Wn.2d 319, 325 (1963). Although Mr. Medvedev was in poor health when the bankruptcy petition was filed, he was alive, his next of kin had suffered no loss cognizable under RCW 4.20.010, *et seq.*, and there was no personal representative authorized to pursue the wrongful death claim. Contrary to the assumption made in In re Sommer, 2008 WL 704401, a wrongful death claim under Washington law is not based on the injuries suffered by the decedent. Those injuries may be the subject of a separate tort claim and, as in this case, may proceed as a survival action for the benefit of the estate. A wrongful death claim, on the other hand, is based on the injuries suffered by the decedent's next

---

[4] Ninth Circuit cases that have followed Segal after 1978 have treated funds to which the debtor was entitled at the time of the petition as property of the estate, even if paid post-petition. If, however, any portion of the later-paid funds was generated through post-petition services, that income is not part of the bankruptcy estate. See In re Jess, 169 F.3d 1204, 1208 (9th Cir. 1999); In re Ryerson, 739 F.2d 1423, 1426 (9th Cir. 1984).

of kin upon his death and is prosecuted by the personal representative for the direct benefit of the statutory beneficiaries. Since none of the elements of a wrongful death action arose pre-petition and neither debtor was entitled to bring such a claim based on pre-petition activities, the claim is not "sufficiently rooted in the pre-bankruptcy past" to be part of the bankruptcy estate.[5]

**CONCLUSION**

For all of the foregoing reasons, the Court finds that the bankruptcy court lacks jurisdiction over Mr. Medvedev's half of the family residence, the survival action, and the wrongful death action. The bankruptcy court's August 14, 2009, decision is REVERSED. Debtor's petition for writ of mandamus is DENIED.

Dated this 9th day of February, 2010.

*[signature]*

Robert S. Lasnik
United States District Judge

---

[5] The Trustee has not identified, and the Court has not found, any post-1978 Ninth Circuit case applying the "sufficiently rooted" standard to a wrongful death claim.